# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **KATHY LYNN BUCHANAN,** | ) |
| Plaintiff | ) |
| | ) Civil Action No. 1:04cv00038 |
| v. | ) **REPORT AND** |
| | ) **RECOMMENDATION** |
| **JO ANNE B. BARNHART,** | ) |
| Commissioner of Social Security, | ) BY: PAMELA MEADE SARGENT |
| Defendant | ) United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Kathy Lynn Buchanan, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2003). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(C). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of

-1-

more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Buchanan filed her application for SSI on or about October 31, 2002, alleging disability as of July 19, 2002, based on scoliosis, back problems, rapid heart beat, arthritis, anemia, hypertension, acid reflux disease, irritable bowel syndrome and "nerves." (Record, ("R."), at 50-52, 63, 85, 92.) Buchanan's claim was denied both initially and on reconsideration. (R. at 25-30, 31, 33-35.) Buchanan then requested a hearing before an administrative law judge, ("ALJ"), (R. at 38.) A hearing was held on September 23, 2003, at which Buchanan was represented by counsel. (R. at 210-32).

By decision dated December 12, 2003, the ALJ denied Buchanan's claim. (R. at 13-20.) The ALJ found that Buchanan had not engaged in substantial gainful activity since the alleged disability onset date. (R. at 19.) The ALJ also found that the medical evidence established that Buchanan had severe impairments, namely mild thoracic scoliosis, degenerative disc disease of the cervical and thoracic spine, bilateral degenerative joint disease of the knees, carpal tunnel syndrome, irritable bowel syndrome, gastroesophageal reflux disease, depression and anxiety,[1] but he found that

---

[1]The ALJ found that Buchanan met the diagnostic listing criteria for an affective disorder and anxiety disorder but that she suffered from only mild functional limitations impacting activities of daily living, social functioning or concentration, persistent and pace and had experienced no episodes of decompensation. (R. at 19.)

-2-

Case 1:04-cv-00038-GMW-PMS   Document 16   Filed 05/17/05   Page 2 of 14   Pageid#: 59

these impairments did not meet or medically equal one of the listed impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17, 19.) The ALJ further found that Buchanan's allegations regarding her limitations were not totally credible. (R. at 20.) The ALJ found that Buchanan retained the residual functional capacity to perform unskilled light[2] work which allowed a discretionary sit/stand option. (R. at 20.) Based on Buchanan's age, education, past work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed in significant numbers in the national economy that Buchanan could perform, including those of a ticket taker, a cashier and a clerical helper. (R. at 20.) Therefore, the ALJ concluded that Buchanan was not under a disability as defined by the Act and was not eligible for SSI benefits. (R. at 20.) *See* 20 C.F.R. § 416.920(g) (2004).

After the ALJ issued his decision, Buchanan pursued her administrative appeals, (R. at 7), and the Appeals Council denied her request for review. (R. at 4-6.) Buchanan then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2004). The case is before this court on the Commissioner's motion for summary judgment filed on October 26, 2004.

## II. Facts

Buchanan was born in 1958, (R. at 50, 214), which classifies her as a "younger person" under 20 C.F.R. § 416.963(c). Buchanan has a high school education and

---

[2]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can do light work, she also can do sedentary work. *See* 20 C.F.R. § 416.967(b) (2004).

-3-

past work experience as a salad cook and a school custodian. (R. at 215.)

At her hearing, Buchanan testified that she was unable to work due to irritable bowel syndrome, acid reflux, scoliosis, blistering, arthritis and severe sinus headaches. (R. at 216-21.) Buchanan testified that she had difficulties concentrating, standing, bending, lifting and sleeping as a result of the scoliosis. (R. at 217-18.) She stated that she suffered from stomach pain daily as a result of irritable bowel syndrome and acid reflux. (R. at 216.) Buchanan stated that she had sinus surgery in 2001, but continued to have headaches and left ear pain. (R. at 219-20.) Buchanan testified that she had been diagnosed with carpal tunnel syndrome in both wrists, which caused numbness and tightness, and prevented her from grasping, picking up or holding objects. (R. at 220.) She stated that she experienced crying spells daily. (R. at 221.) She testified that she was not being treated for her nerves at that time because she could not afford it. (R. at 223.) Buchanan stated that she could stand, walk or sit for 30 minutes without interruption. (R. at 223.) She stated that she could lift items weighing up to 10 pounds. (R. at 224-25.)

A vocational expert, Jean Hambrick, also testified at Buchanan's hearing. (R. at 229-31.) Hambrick was asked to assume an individual of Buchanan's age, education and work experience, who had the residual functional capacity to perform light and sedentary work which required the opportunity to alternate positions at half- hour intervals and who would have to perform simple, routine, repetitive tasks involving only simple one-to-two step instructions. (R. at 229-30.) Hambrick testified that there was a significant number of jobs in the national economy that such an individual could perform, such as work as a cashier, a ticket taker and a clerical helper. (R. at 230.)

In rendering his decision, the ALJ reviewed medical records from Bluefield Regional Medical Center; Brown Chiropractic, P.C.; Mercer Health Right, Inc.; Tazewell Community Hospital; Spinal Imaging, Inc.; The Clinic; Dr. Donald R. Williams, M.D., a state agency physician; Dr. Pablo M. Carpio, M.D.; Dr. Mrugendra R. Patel, M.D.; and L. Andrew Steward, Ph.D., a licensed clinical psychologist.

On April 7, 1997, Dr. Mrugendra R. Patel, M.D., saw Buchanan for her complaints of headaches. (R. at 182-83.) Buchanan reported that she felt somewhat nervous and depressed and that she had experienced these symptoms for the past six months. (R. at 182.) Dr. Patel diagnosed chronic, recurrent headaches and chronic anxiety-depressive disorder with chronic insomnia and prescribed Elavil. (R. at 183.) On April 28, 1997, Buchanan complained of headaches and dizziness. (R. at 181.) She reported that she felt nervous, but denied being depressed. (R. at 181.) Dr. Patel diagnosed chronic mixed headaches and chronic anxiety disorder with chronic insomnia. (R. at 181.) On August 4, 1997, a nerve conduction study was performed as a result of Buchanan's complaints of pain and tingling in both upper extremities. (R. at 177-78.) The study indicated that Buchanan suffered from mild left carpal tunnel syndrome. (R. at 177.) On October 7, 1997, Buchanan complained of headaches and pain and numbness in both arms. (R. at 179.) Dr. Patel reported that Buchanan had no cervical tenderness or spasm and she had normal muscle tone and strength in all four extremities. (R. at 179.) Dr. Patel diagnosed chronic mixed headaches, chronic pain and paresthesia in both upper extremities from mild bilateral carpal tunnel syndrome and chronic polyarthralgia. (R. at 179.)

On October 3, 2001, Buchanan was seen at Mercer Health Right, Inc., for complaints of numbness in both arms, which radiated into her neck and cervical spine

pain. (R. at 114.) X-rays of Buchanan's cervical spine were normal except for minor osteophyte formation at the C5-C6 level. (R. at 115, 130.) She was diagnosed with hypertension, uncontrolled and questionable cervical spine pain. (R. at 114.) X-rays of Buchanan's thoracic spine performed on July 31, 2001, showed mild scoliosis and mild degenerative changes at multiple levels. (R. at 131.) X-rays of Buchanan's lumbar spine showed mild degenerative changes. (R. at 131.) On January 30, 2002, Buchanan complained of gastroesphageal reflux disease and hypertension. (R. at 107.)

On December 18, 2002, Dr. David R. Robins, D.O., a board certified orthopedic surgeon, evaluated Buchanan for complaints of neck and back pain. (R. at 139-40.) Buchanan's blood pressure reading was 118/84. (R. at 139.) Dr. Robins reported that Buchanan had a normal gait. (R. at 140.) Examination of Buchanan's neck revealed some tenderness. (R. at 140.) She had good range of motion of her cervical spine. (R. at 140.) She had normal strength in all extremities. (R. at 140.) X-rays of Buchanan's cervical spine showed minor marginal osteophytosis at the C4-C5 and C5-C6 levels suggesting minor degenerative disc disease. (R. at 191.) Dr. Robins diagnosed cervical strain. (R. at 140.)

On February 5, 2003, Dr. Donald R. Williams, M.D., a state agency physician, indicated that Buchanan had the residual functional capacity to perform medium work.[3] (R. at 151-58.) No postural, manipulative, visual, communicative or environmental limitations were found. (R. at 153-55.) This assessment was affirmed by Dr. Richard M. Surrusco, M.D., another state agency physician, on May 5, 2003. (R. at 158.)

---

[3]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, she also can perform sedentary and light work. *See* 20 C.F.R. § 416.967(c) (2004).

On July 18, 2003, Dr. Pablo M. Carpio, M.D., saw Buchanan for her complaints of irritation of the chest, bowels and rectum. (R. at 161-62.) Dr. Carpio diagnosed gastroesphageal reflux disease, hypertension and hyperlipidemia. (R. at 162.) Dr. Carpio reported that Buchanan was unable to work indefinitely due to irritable bowel syndrome and gastroesphageal reflux disease. (R. at 163.) On November 5, 2003, Dr. Carpio indicated that Buchanan could lift and carry items weighing less than 10 pounds, stand or walk two hours in an eight-hour workday and sit for less than six hours in an eight-hour workday. (R. at 206-07.) He indicated that Buchanan's ability to push and/or pull items was limited in her upper and lower extremities. (R. at 207.) Dr. Carpio indicated that Buchanan could occasionally climb, balance, kneel, crouch and crawl. (R. at 207.) He indicated that Buchanan's ability to reach in all directions was limited and that she could not work around hazards. (R. at 208-09.)

On October 3, 2003, L. Andrew Steward, Ph.D., a licensed clinical psychologist, evaluated Buchanan at the request of Buchanan's attorney. (R. at 194-201.) Steward reported that Buchanan's affect was constricted and her mood was anxious and dysphoric. (R. at 195.) The Wechsler Adult Intelligence Scale-III, ("WAIS-III"), test was administered, and Buchanan obtained a verbal IQ score of 74, a performance IQ score of 77 and a full-scale IQ score of 74. (R. at 197.) Buchanan was diagnosed with recurrent, moderate major depressive disorder and a generalized anxiety disorder. (R. at 200.) Steward indicated that Buchanan had a Global Assessment of Functioning, ("GAF"), score of 51.[4] (R. at 200.) Steward indicated

---

[4]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

-7-

that Buchanan was permanently and totally disabled and that her prognosis was poor. (R. at 200.)

Steward completed a mental assessment indicating that Buchanan was moderately limited, but still able to function satisfactorily in her ability to remember locations and work-like procedures, to understand, remember and carry out short, simple instructions and to sustain an ordinary routine without special supervision. (R. at 202-04.) He indicated that Buchanan was severely limited, but not precluded, in her ability to understand, remember and carry out detailed or complex instructions, to maintain attention and concentration, to perform activities within a schedule, to maintain regular attendance and to be punctual, to work with or near others without being distracted, to make simple work-related decisions, to complete a normal workday, to perform at a consistent pace, to interact appropriately with co-workers, to respond appropriately to work pressures and to respond appropriately to changes in a routine work setting. (R. at 202-03.) Steward further found that Buchanan had no useful ability to interact appropriately with the public and with supervisors. (R. at 203.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2004); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 416.920 (2004). If the Commissioner finds

conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2004).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairment. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education and work experience, to perform alternative jobs which exist in the national economy. *See* 42 U.S.C.A. §§ 423 (d)(2)(A), 1382c(a)(3)(A)-(B) (West Supp. 2002); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall,* 658 F.2d at 264-65; *Wilson v. Califano,* 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated December 12, 2003, the ALJ denied Buchanan's claim. (R. at 13-20.) The ALJ found that the medical evidence established that Buchanan had severe impairments, namely mild thoracic scoliosis, degenerative disc disease of the cervical and thoracic spine, bilateral degenerative joint disease of the knees, carpal tunnel syndrome, irritable bowel syndrome, gastroesophageal reflux disease, depression and anxiety, but he found that these impairments did not meet or medically equal one of the listed impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17, 19.) The ALJ further found that Buchanan's allegations regarding her limitations were not totally credible. (R. at 20.) The ALJ found that Buchanan retained the residual functional capacity to perform unskilled light work which allowed a discretionary sit/stand option. (R. at 20.) Based on Buchanan's age, education, past work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed in significant numbers in the national

economy that Buchanan could perform, including those of a ticket taker, a cashier and a clerical helper. (R. at 20.) Therefore, the ALJ concluded that Buchanan was not under a disability as defined by the Act and was not eligible for SSI benefits. (R. at 20.) *See* 20 C.F.R. § 416.920 (g) (2004).

In her brief, Buchanan argues that substantial evidence does not exist in this record to support the ALJ's finding that she was not disabled. (Plaintiff's Brief at 4-8). In particular, Buchanan argues that the ALJ erred by failing to grant proper weight to the opinion of Dr. Carpio, her treating physician, and to Steward's assessment. (Plaintiff's Brief at 4-8.)

As stated above, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v.Weinberger,* 528F.2d 1153, 1156 (4th Cir. 1975). "Thus it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if [her] decision is supported by substantial evidence." *Hays,* 907 F.2d at 1456. Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion based on the factors set forth at 20 C.F.R. § 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

In this case, the ALJ found that Buchanan had the physical residual functional capacity to perform unskilled, light work which allowed a discretionary sit/stand option. (R. at 20.) Buchanan argues that the ALJ erred by failing to give controlling

weight to the opinion of Dr. Carpio, her treating physician. (Plaintiff's Brief at 4-8.) Under 20 C.F.R. § 416.927(d), the ALJ must give controlling weight to a treating source's opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of record. The ALJ gave little weight to the assessment of Dr. Carpio because it was not supported by his own medical findings and because it was inconsistent with the record as a whole. (R. at 15-16.) X-rays of Buchanan's cervical spine were normal except for minor osteophyte formation at the C5-C6 level. (R. at 115, 130, 191.) In December 2002, she had good range of motion of her cervical spine and normal strength in all extremities. (R. at 140.) X-rays of Buchanan's thoracic spine showed mild scoliosis and mild degenerative changes. (R. at 131.) X-rays of Buchanan's lumbar spine showed mild degenerative changes. (R. at 131.) Dr. Carpio diagnosed Buchanan with gastroesphageal reflux disease, irritable bowel syndrome, hypertension and hyperlipidemia. (R. at 162.) His records offer no explanation why these conditions would limit Buchanan to lifting weights of less than 20 pounds. Based on my review of the evidence, I find that substantial evidence exists to support the ALJ's decision not to give controlling weight to Dr. Carpio's assessment. In particular, the ALJ's finding is supported by the opinions of Dr. Robins and the state agency physician.

Buchanan further argues that the ALJ erred by failing to give controlling weight to the opinion of psychologist Steward. (Plaintiff's Brief at 4-8.) The ALJ gave little weight to the opinion of Steward, stating that Steward relied upon Buchanan's representations in making his findings. (R. at 17.) The ALJ further noted that "no independently ascertainable results of mental status testing for concentration, memory, reasoning, or judgment were documented." (R. at 17.) The record indicates that Steward based his assessment on the clinical interview as well as the WAIS-III, the

-11-

Beck Anxiety Inventory, the Beck Depression Inventory and the Minnesota Multiphasic Personality Inventory - Second Edition, ("MMPI-2"). (R. at 194, 197-99, 203.) The ALJ also noted that the record failed to reflect that Buchanan ever complained of any mental impairment prior to her consultation with Steward. (R. at 17.) The record shows that in April 1997, Buchanan complained to Dr. Patel that she felt nervous and depressed. (R. at 182.) Dr. Patel diagnosed chronic anxiety-depressive disorder with chronic insomnia and prescribed medication. (R. at 183.) Based on this, I further do not find that substantial evidence exists to support the ALJ's rejection of Steward's assessment. Based on this, I do not find that substantial evidence exists to support the ALJ's finding with regard to Buchanan's mental residual functional capacity.

Based on the above, I do not find that substantial evidence exists to support the ALJ's finding with regard to Buchanan's mental residual functional capacity, and I recommend that the Commissioner's motion for summary judgment be denied and the case be remanded for further development.

## PROPOSED FINDING OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions, and recommendations:

> 1. Substantial evidence exists to support the ALJ's finding with regard to Buchanan's physical residual functional capacity;

2. Substantial evidences does not exist in this record to support the Commissioner's finding with regard to Buchanan's mental residual functional capacity; and

3. Substantial evidence does not exist in this record to support the Commissioner's finding that Buchanan was not disabled under the Act.

## RECOMMENDED DISPOSITION

The undersigned recommends that this court deny the Commissioner's motion for summary judgment and remand this case for further development.

## Notice to the Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]. The judge may also receive further evidence or recommit the matter to the magistrate [judge] with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of

the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable Glen M. Williams, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 17th day of May, 2005.

/s/ Pamela Meade Sargent
UNITED STATES MAGISTRATE JUDGE